UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Abraham A. Ungar, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | Civil No. 3:06-cv-108 |
| North Dakota State University, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Before the Court are a number of competing motions and related documents.  NDSU

moved for summary judgment (Doc. #26), which Ungar opposed (Doc. #30).  Ungar then moved

for summary judgment (Doc. #35).  On June 8, 2007,  NDSU filed a reply memorandum (Doc.

#38).  Ungar filed a response on June 14, 2007 (Doc. #39).  In the interim, Ungar moved to

amend his complaint to include his former attorney, John Gosbee, as a defendant (Doc. #33).

Most recently, Ungar has moved for a bench trial (Doc. #49).

A May 8, 2007 hearing addressed the motion for summary judgment filed by NDSU.  A

second hearing, on September 4, 2007, was held to address Ungar's cross-motion for summary

judgment.

## SUMMARY OF DECISION

Plaintiff Abraham Ungar has filed an 11-Count complaint alleging various violations of

state law and actionable harassment and discrimination under Title VII.  In addition, Professor

Ungar has filed a number of motions seeking various factual determinations by the Court.

Because NDSU has Eleventh Amendment immunity, the state law claims as set forth in Counts 6, 8, 10, and 11 are dismissed.  Because Ungar has failed to establish that he timely filed a verified charge and has further failed to establish a prima facie case under Title VII for harassment, disparate treatment, or retaliation, the claims in Counts 5, 7, and 9 are dismissed. Counts 1, 2, 3, and 4 fail to assert specific claims and are dismissed.  Because these rulings dispose of all other claims, Professor Ungar's other motions for various factual determinations are moot, there no longer being any action in controversy.   Summary judgment is therefore granted in favor of the defendant on all counts.  Plaintiff's competing motions are all denied.

## FACTS

Abraham Ungar is a mathematics professor at NDSU.  He has extensively researched and, in fact, first referenced a mathematical principle that he calls Gyrocommutative Gyrogroups, which are also known in the mathematics community as Bruck Loops or K-Loops.

By his own admission, Professor Ungar has historically graded rigorously and was not always the recipient of positive student evaluations.  As a result of his frustrations with the student evaluations system, he did not give his Spring 2001 student evaluations to the chairman of the mathematics department; instead, he forwarded them to the Dean of the College of Science and Mathematics.  Dr. Unger admits that this was not consistent with NDSU policy.

Also in 2001, between the months of April and October, Ungar was engaged in a debate with a colleague, Professor Tuval Foguel[1].  At the time, Foguel was a non-tenured, junior professor.  The focus of this debate is encapsulated in numerous writings and conversations

---

[1]Foguel has since accepted a position at Auburn University.

between Ungar and Foguel which focused on Foguel's decision to use the term "K-Loops" in a research paper, without crediting Ungar with first using the term or referencing the parallel term coined by Ungar, gyrocommutative gyrogroups. One of these "communications" was a note, hand-written by Ungar in Hebrew, that appears to include the word "Warning" in red, capital letters. Ungar admits writing the note but vigorously disputes writing "warning." He asserts that someone else added the word "warning."[2]

Ungar was given a Letter of Reprimand on October 10, 2001, based on his violations of the student evaluation policy and this purported harassment of Foguel. The handwritten message in Hebrew was specifically mentioned:

> In communications to Professor Tuval Foguel you have accused him of using notation which is non-standard. In your efforts to have his work conform to notation conducive to your advantage, you made what we consider a veiled threat on your document entitled "The Prophetic Referees of AEM." At the top of the document you wrote and signed a message in the security of the Hebrew language. The message was preceded by the Hebrew word meaning "Warning." It was written in red and the only part of the document written in red. Professor Foguel does not accept your conclusions in this matter. In particular we consider this form of intimidation by a full Professor used against a non-tenured tenure-track faculty to be harassment.

Ungar argues that the phrase "in the security of the Hebrew language" is an anti-Semitic remark, intended to victimize him by pointing him out as a Jewish person to the faculty in the highly charged, post-9/11 environment. The letter of reprimand has been amended twice. The final letter, dated June 20, 2002, omitted reference to the hand-written note but contained many other instances of Ungar's alleged harassment and intimidation toward Foguel.

---

[2]Ungar argues that since Hebrew is written from right to left, the placement of "WARNING" is ungrammatical, an error a man of his education and intelligence would not make.

Ungar argues it is clear that the evidence of Foguel's harassment was fabricated.  He cites in support the fact that after Foguel left NDSU, he wrote a paper that did incorporate Ungar's suggestions.  Foguel's paper stated, "A Bruck Loop is a Bol loop with the automorphic inverse property, i.e., [equation]. (These are also known as K-loops and gyrocommutative gyrogroups)." (Doc. #1-5).  While Foguel's parenthetical mentions the terminology advocated by Ungar, it differs significantly from the specific language suggested by Ungar.

Ungar contends that this entire situation is based on his refusal to lower his standards and boost student grades.  He asserts that he is being discriminated against because he has violated NDSU's "unwritten policy" of increasing enrollment through grade inflation.

## ANALYSIS

Summary judgment is appropriate if the pleadings, discovery, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Quick v. Donaldson Co., 90 F.3d 1372, 1376 (8th Cir. 1996).  On motion for summary judgment, a court views the facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Mere allegations are insufficient to defeat summary judgment.  Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999). The non-movant must make a sufficient showing on the essential elements of his case and may not rest on mere denials or allegations in the pleadings.  Anderson, 477 U.S. at 250.  Even if the movant does not produce evidence to negate the opposing party's claim, summary judgment is proper against a non-movant who fails to make a sufficient showing on an essential element of his or her case whose burden that party would bear at trial.  Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

Furthermore, a court is not required to "plumb the record in order to find a genuine issue of material fact." Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). The Court need not "speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nomoving party's claim." Id. (citing White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)).

**State law claims.**

In Counts 6, 8, 10, and 11, Ungar alleges NDSU's actions violated the North Dakota Human Rights Act and tort laws. NDSU argues the state law claims made by Ungar in Counts 6, 8, 10, and 11, are barred by Eleventh Amendment immunity.

It is well-established that States are immune from suits brought in federal courts by their own citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity may be waived, but it must be done so unequivocally. Id. at 99. Ungar has failed to direct the Court to any authority indicating North Dakota has consented to federal jurisdiction over State Human Rights Act claims or state tort claims. The Court is aware of no such waiver of immunity. In fact, the state has preserved its immunity through statute. See N.D. Cent. Code § 32-12.2-10. Therefore, the state law claims are barred by Eleventh Amendment immunity and are hereby **DISMISSED.**

**Title VII Claims.**

In Counts 5, 7, and 9, Ungar alleges NDSU's actions constituted unlawful harassment, disparate/discriminatory treatment, and unlawful retaliation, in violation of Title VII. There are numerous bases upon which these claims must fail as a matter of law.

5

Failure to timely file verified charge.  First, Ungar does not appear to have timely filed his verified charge.  In a Title VII case, an employee must file a verified charge with the EEOC within 300 days of the employment practice.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); 42 U.S.C. § 2000e-5(e)(1).  Here, Ungar has failed to identify which actions were within the 300 days prior to his filing the verified charge on January 10, 2006.  The original letter of reprimand and all revisions thereto were given to Ungar well in excess of 300 days prior to January 10, 2006.  No other actions are plainly stated in any of Ungar's pleadings.  Although it is remotely possible some other action might be ferreted out from Ungar's voluminous pleadings and exhibits, this is not the Court's obligation when ruling on a motion for summary judgment.  Barge, 87 F.3d at 260.  Nonetheless, the Court has thoroughly reviewed the full and complete record and has failed to identify any cognizable action.

McDonnell-Douglas burden-shifting paradigm.  Second, Ungar has failed to carry his burden to show that ethnicity, religion, or retaliation were a determinative factor in any of the alleged actions.  In a Title VII action, the plaintiff carries the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973).  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action.  Id.  If the employer articulates such a reason, the burden shifts back to the plaintiff, who must put forth evidence to show the employer's reason is actually a pretext for discrimination.  Id.; Gilbert v. Des Moines Area Community College, 495 F.3d 906, 914 (8th Cir. 2007).  This "evidence" must include some additional facts and generally must do more than merely discredit the employer's explanation.  Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336 (8th Cir. 1996).

Harassment claim.  The Court first looks to whether Ungar has established a prima facie case of religious or national origin discrimination based on a hostile work environment.  To establish such a prima facie case, Ungar is required to show 1) he is a member of a protected group, 2) he was subjected to unwelcome harassment, 3) the harassment was based on race, 4) the harassment affected a term, condition, or privilege of his employment, and 5) NDSU knew or should have known of the harassment and did not remedy it.  Tatum v. City of Berkeley, 408 F.3d 543, 550 (8th Cir. 2005).  The first requirement is easily met, as it is undisputed that Ungar is of Jewish ancestry.  Second, the Court must determine whether Ungar was subjected to unwelcome harassment.  Harassment is defined as "Words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose."  Black's Law Dictionary (8th ed. 2004), harassment.  A hostile work environment has been characterized as objectively "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 618 (8th Cir. 2007) (quoting Tademe v. Saint Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003)).

The written phrase, "in the security of the Hebrew language" simply does not constitute harassment.  The Eighth Circuit has held that "a few isolated or sporadic insults" do not constitute actionable harassment.  Carpenter, 481 F.3d at 618 (citing Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 846 (8th Cir. 2006)).  NDSU's use of the phrase "in the security of the Hebrew language" would likely not be viewed as objectively insulting or discriminatory.  Rather, it appears that the language was used only to convey that NDSU

suspected Ungar was intentionally being secretive about his behavior toward Foguel. However, even if the phrase was considered objectively discriminatory, the presence of the phrase in a letter of reprimand and one amendment thereto lacks the frequence or repetitiveness to constitute "harassment" for Title VII purposes. Therefore, Ungar has failed to establish a prima facie case of religious or national origin discrimination.

Disparate treatment claim. Second, Ungar alleges he was subject to disparate treatment. To establish a prima facie case on this claim, Ungar must show that he 1) is a member of a protected group, 2) was meeting the legitimate expectations of his employer, 3) suffered an adverse employment action, and 4) showed facts sufficient to raise an inference of discrimination. Cherry v. Ritenour School Dist., 361 F.3d 474, 478 (8th Cir. 2004). It is undisputed that Ungar is Jewish, satisfying the first requirement. The second requirement is arguably met, because although Ungar did teach class, conduct research, and write textbooks, he also admits violating some NDSU policies. However, resolution of this question is unnecessary because it is clear Ungar has suffered no adverse employment action. An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage." Clegg v. Arkansas Dept. of Corrections, 496 F.3d 922, 926 (8th Cir. 2007) (citing Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007).

Ungar fails to direct the court to a single case in which a letter of reprimand constitutes "adverse employment action." The Eighth Circuit has established such letters are, in fact, not adverse employment action. Clegg, 496 F.3d at 929; Burkett v. Glickman, 327 F.3d 658, 661 (8th Cir. 2003); Sims v. Health Midwest Physician Serices Corp., 196 F.3d 915, 921 (8th Cir. 1999). Nor do NDSU's supervision of Ungar's teaching and denial of Ungar's applications for

travel grants constitute adverse employment action.  See Clegg, 496 F.3d at 929 (holding that employer's failure to provide training and orientation, denial of access to necessary employment tools, failure to reinstate employee to prior position, interference with employee's authority, excluding employee from meetings were at most "trivial" and did not constitute adverse employment action).  Therefore, Ungar's disparate treatment claim fails.

     Retaliation claim.  In order to establish a prima facie case of retaliation, Ungar must show 1) that he engaged in statutorily protected activity, 2) an adverse employment action was taken against him, and 3) a causal connection exists between the two events.  Clegg, 496 F.3d at 928.  It is not clear from Ungar's pleadings exactly what he claims was protected activity for purposes of this claim; however, the issue is moot because he is unable to demonstrate any adverse employment action.  His retaliation claim therefore fails.

Other claims.

     Ungar asserts other "Counts," specifically 1, 2, 3, and 4,  in his complaint that are not identified as corresponding to any statute or law and are not cognizable claims.  Those Counts are as follows:

        Count 1.  NDSU forced professor Foguel (, at the time Professor Foguel was vulnerable as a candidate for tenure and promotion at NDSU,) to fabricate evidence for NDSU that Ungar harassed and intimidated Professor Foguel.

        Count 2.  NDSU ignored the letter that Ungar's lawyer, Atty. John Gosbee, sent to NDSU's President Chapman, dated Dec. 24, 2003, Exhibit 4, with undeniable evidence originated from Professor Foguel himself (after he left NDSU), that Ungar's "crime" II in the LORs is false:  Ungar did not harass or intimidate Foguel concerning the "gyrocommutative gyrogroup" terminology issue.

        Count 3.  NDSU seduced Ungar's lawyer, Atty. John Gosbee, to perform technical violations (like neglecting deadlines) that leave courts with no jurisdiction to give justice to Ungar's lawsuit against NDSU.

Count 4.  NDSU seduced Ungar's lawyer, Atty. John Gosbee, to refrain from providing courts crucially important evidence that verifies that once professor Foguel left NDSU he demonstrated that Ungar has never harass him or intimidated him about the "gyrocommutative gyrogroup" terminology issue.

Ungar also requests additional relief, similar to these four Counts, from the Court at the end of his 39-page reply brief (Doc. #35), asking again that the Court "declare" seven individuals liars, vacate the letter of reprimand, have NDSU's Vice President for Academic Affairs investigated by the FBI, and declare that NDSU forced Foguel to fabricate evidence, among other requests.

These allegations largely request the Court make factual findings.  Even if proven, these findings have no bearing on any recognizable claim being asserted and which is the subject of the summary judgment motion.  Therefore, these additional Counts are **DISMISSED**, sua sponte.

## DECISION

An exhaustive review of Plaintiff's various pleadings and arguments, as well as the entire record, has failed to raise any material fact issue.  It appears from the record that NDSU is entitled to judgment as a matter of law.  The motion by Plaintiff for summary judgment is hereby **DENIED.**  The motion by Defendant for summary judgment is hereby **GRANTED.**  All remaining pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**

Dated this 7th day of November, 2007.

_____/s/_____Ralph R. Erickson_____
Ralph R. Erickson, District Judge
United States District Court